Dear Senator Amedee:
You have requested an opinion of this Office regarding the application of best available control technology ("BACT") to carbon dioxide ("CO2") emissions under Title 33, part III, of the Louisiana Administrative Code. Specifically, you have asked whether the provisions LAC 33:III.509
require a BACT analysis for CO2 emissions prior to the issuance of a "prevention of significant deterioration" ("PSD") permit. As will be discussed in more detail herein, it is the opinion of this Office that unless and until the Administrator of the Environmental Protection Agency ("EPA") makes a final decision to classify CO2 as a pollutant subject to regulation under the Clean Air Act ("CAA"), Louisiana is under no duty to require a BACT emission limitation for CO2 in its PSD permit program.
Background
In order to properly answer your question, it is important to first provide context by briefly reviewing the purpose of the CAA and, more specifically, the PSD permit program. The federal CAA, [1] includes a number of regulatory programs designed "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and productive capacity of its population . . ."[2] One of the most important goals of the CAA is the maintenance of minimum air quality standards for particular pollutants throughout the nation.[3]
These air quality standards are known as National Ambient Air Quality Standards ("NAAQS"). NAAQS are established by the United States EPA and govern the discharge of "criteria pollutants."[4] *Page 2 
The PSD permit program is one of the key programs of the CAA for preventing the deterioration of air quality in areas already meeting the NAAQS.[5] Under the PSD program, PSD permits and stringent emissions controls are required before a major stationary facility may be constructed.[6] In order to receive a PSD permit, a proposed facility must be subject to the BACT to control the emissions of "each pollutant subject to regulation" under the Act and the regulations promulgated thereunder.[7]
The CAA creates a partnership between the federal and state governments to achieve these goals. Thus, states retain responsibility for assuring that each area within their jurisdiction meets national air quality standards.[8] In order to accomplish this goal, states create State Implementation Plans ("SIPs") which provide for the "implementation, maintenance, and enforcement of such primary standard in each air quality region . . . within such State."[9] Each state must submit to the Administrator of the EPA its SIP and once approved, SIPs become federally enforceable, [10] but are primarily administered by the states.[11]
In addition to providing for the regulation of NAAQS in a SIP, the CAA also requires states to adopt regulatory programs for issuing PSD permits for the construction of major sources of air pollution as part of their SIP.[12] Louisiana's PSD program has been approved by the EPA as part of Louisiana's SIP.[13] Furthermore, Louisiana's PSD program is comparable to the federal program.
Discussion
The determination of the PSD permit program's BACT conditions for the control of pollutant emissions is one of the central features of the PSD program. BACT is an emissions limitation which is based on the maximum degree of control that can be achieved for a pollutant emitted by a particular type of source that considers energy and economic considerations, as well as environmental impact.[14] In order to determine whether a BACT emissions limitation for CO2 is required in a PSD permit, a *Page 3 
determination of whether CO2 is a "pollutant subject to regulation" under the CAA must be made.[15]
Under both the federal and state PSD program regulations, BACT is required for "each regulated NSR [new source review] pollutant."[16]
This term "regulated NSR pollutant" has been defined to include four categories of pollutants: (1) pollutants that are regulated under NAAQS; (2) pollutants regulated under a new source performance standard ("NSPS"); (3) a class I or II substance subject to a standard established by Title VI of the CAA[17]; or (4) "[a]ny pollutant otherwise subject to regulation under the Act."[18]
Currently, it is clear that CO2 does not fall under the first three categories listed in the definition of "regulated NSR pollutant." The EPA has not promulgated a NAAQS standard for CO2.[19] Nor has the EPA promulgated a standard under section 111's NSPS.[20] Finally, CO2
emissions are not regulated under Title VI of the CAA.[21] Title VI is designed to protect the stratospheric ozone and is not applicable to CO2.[22] Thus, a determination as to whether CO2 emissions are to be regulated under the PSD program depends on whether CO2 is a pollutant "otherwise subject to regulation under the Act."
In Massachusetts v. EPA, [23] the United States Supreme Court concluded that CO2 is a pollutant.[24] However, the Massachusetts
decision did not address whether CO2 is a pollutant "subject to regulation" under the CAA.[25] The EPA has historically interpreted the phrase "subject to regulation under the Act" to describe air pollutants subject to CAA statutory provisions or regulations that require actual control of emissions of that pollutant.[26] In fact, in response to the ruling in Massachusetts, the EPA issued an Advance Notice of Proposed Rule Making ("ANPR") in order to gather information and *Page 4 
determine how to proceed with possible greenhouse gas ("GHG") regulations under the CAA.[27] Significantly, in the ANPR, the EPA states:
 PSD permits have not been required to contain BACT emissions limit [sic] for GHGs because GHGs (and CO2
in particular) have not been subject to any CAA provisions or EPA regulations issued under the Act that require actual control of emissions . . . In the absence of statutory or regulatory requirements to control GHGs under the Act, a stationary source need not consider those emissions when determining its major source status.[28]
Therefore, according to the EPA's interpretation of the phrase "subject to regulation," because CO2 is not currently subject to control requirements, it is not subject to regulation under the CAA or the PSD program.
In addition to the EPA's ANPR on the future regulation of GHGs, the question of whether CO2 is currently "subject to regulation" under the Act is also being considered by the courts, at both the state and federal levels. On November 27, 2007, the Kansas Supreme Court said it would hear an appeal by the Sunflower Electric Power Company regarding the rejection of its PSD permit application.[29] On June 30, 2008, a Georgia state court found that because CO2 is a pollutant, as determined by theMassachusetts decision, it is subject to regulation under the CAA.[30]
As a result, the Georgia court concluded that federal law requires a PSD permit to contain CO2 emissions limitations based on a BACT analysis.[31]
Finally, federally, the EPA Environmental Appeals Board ("EAB"), in In reDeseret Power Electric Cooperative, [32] rejected the plaintiff's contention that the phrase "subject to regulation" has a plain meaning and that this meaning compels the EPA to impose a CO2 BACT limit in the PSD permit.[33] Instead, the EAB concluded:
 the meaning of the term "subject to regulation under this Act" as used in sections 165 and 169 [ 42 U.S.C. §§ 7475 and 7479] is not so clear and unequivocal as to preclude the Agency from exercising discretion in interpreting the statutory phrase. Thus we find no evidence of *Page 5 
Congressional intent to compel EPA to apply BACT to pollutants that are subject only to monitoring and reporting requirements.[34]
Under the Chevron doctrine, courts must defer to an agency's interpretation of a statute when the statute is ambiguous.[35] It is our opinion that this Office should apply the same standard to your current question. In this instance, it is apparent from the aforementioned cases that the interpretation of the phrase "subject to regulation" under the CAA is far from clear. Furthermore, the EPA's ANPR on the regulation of GHG reflects EPA's position that CO2 is currently not "subject to regulation" under the CAA. Moreover, consistent with the EPA's decision not to regulate CO2 as a criteria pollutant under the CAA, Louisiana has also made a policy decision to exempt CO2 from the definition of a regulated pollutant under Louisiana's air quality regulations.[36] Specifically, Louisiana has classified carbon dioxide emissions as an "insignificant activity," thereby exempting the requirement to control CO2 emissions from Louisiana permits.[37]
Therefore, CO2, and other GHGs, are currently not "subject to regulation" under the CAA as interpreted by the EPA and LDEQ. Under Chevron, we must defer to that interpretation.
Conclusion
In accordance with the structure of cooperative federalism under the CAA, the EPA establishes the basic requirements for air quality standards, including the PSD program, in its federal regulations. States are then required to develop their own standards and procedures designed to meet the air quality needs of their unique geographical areas as long as their programs are at least as stringent as EPA's requirements.[38]
Moreover, the CAA retains the states' authority to adopt or enforce emissions limitations that are more stringent than the federal standards.[39] Currently, Louisiana has adopted standards that are comparable to the federal regulations, meaning that Louisiana, like the EPA, does not regulate CO2 under its PSD program. *Page 6 
Accordingly, it is the opinion of this Office that the CAA requires states to develop air quality standards, through SIPs, that are at least as stringent as the regulations promulgated by the EPA. The EPA does not require the control of CO2 emissions under the PSD program of the CAA. Therefore, it is further the opinion of this Office that unless and until the EPA classifies CO2 as a pollutant subject to regulation under the CAA, Louisiana is under no duty to include a BACT emission limitation for CO2 in its PSD permit program.
We hope that this sufficiently answers your inquiry, however if we may be of further assistance please do not hesitate to contact our Office.
 Yours truly,
 JAMES D. "BUDDY" CALDWELL
 ATTORNEY GENERAL
 By: __________________________
 Megan K. Terrell
 Assistant Attorney General
 JDC/MKT/tp
[1] 42 U.S.C. § 7401 et seq.
[2] 42 U.S.C. § 7401 (b)(1).
[3] DAVID R. WOOLEY ELIZABETH M. MORSS, CLEAN AIR ACT HANDBOOK: A PRACTICAL GUIDE TO COMPLIANCE 100 (15th ed. 2005).
[4] Currently, there are only six criteria pollutants: sulfur dioxide, particulate matter, nitrogen oxide, carbon monoxide, ozone, and lead. Seegenerally, 40 C.F.R. 50 (2008). These pollutants have been determined to cause or contribute to air pollution that may reasonably be anticipated to endanger public health or welfare. 42 U.S.C. § 7408(a)(1)(A).
[5] 42 U.S.C. § 7470.
[6] 42 U.S.C. § 7475.
[7] 42 U.S.C. §§ 7475(a)(4) and 7479(3); 40 C.F.R. 51.166 and 52.21;see also, LAC 33:III.509.
[8] 42 U.S.C. § 7407(a) ("Each state shall have the primary responsibility for assuring air quality within the entire geographic area comprising such State . . .").
[9] 42 U.S.C. § 7410(a)(1).
[10] 42 U.S.C. § 7413.
[11] 42 U.S.c. § 7410(a)(2).
[12] 42 U.S.C. §§ 7471 and 7475; 40 C.F.R. § 51.166(a)(1)
[13] See, LAC 33:III.509.
[14] EPA, PSD Basic Information, http://www.epa.gov/nsr/psd.html#best
(last visited December 3, 2008); 42 U.S.C. § 7479(3) (BACT is "an emission limitation based on the maximum degree of reduction of each pollutant subject to regulation under this chapter emitted from or which results from any major emitting facility, which the permitting authority, on a case-by-case basis, taking into account energy, environmental, and economic impacts and other costs, determines is achievable for such facility through application of production processes and available methods, systems, and techniques, including fuel cleaning, clean fuels, or treatment or innovative fuel combustion techniques for control of each such pollutant"); see also, LAC 33.III.509(B).
[15] See supra, n. 7.
[16] 40 C.F.R.52.21(j)(2)-(3); LAC 33:III.509(J)(2)-(3); NSR denotes a seriers of provision in the CAA designed to ensure that large industrial sources of air pollution included modern pollution-control equipment when they altered their facilities. 42 U.S.C. § 7475.
[17] See, 42 U.S.C. 7671(a) for a list of Class I and II substances regulated under Title VI of the CAA.
[18] 40 C.F.R. 52.21(b)(50); LAC 33:III.509(B).
[19] See, supra, n. 4.
[20] 40 C.F.R. 60.16.
[21] See, 40 C.F.R. 80.
[22] Id.
[23] 549 U.S. 497 (2007).
[24] Id.
[25] The Supreme Court's ruling in Massachusetts focused on whether the EPA had the authority to regulate greenhouse gases under Title II, which governs the regulations of mobile sources of air pollution, such as motor vehicles. Id. The PSD program is found in Title I of the CAA, which deals with preventing and reducing air pollution from stationary sources. See, 42 U.S.C. §§ 7401-7515.
[26] In re Deseret Power Electric Cooperative, EAB Appeal No. PSD 07-03 (filed Oct. 1, 2007); EPA Region VIII's Response to Petition for Review, Nov. 2, 2007, available at http://yosemite.epa.gov/OA/EAB_WEB_
Docket.nsf/Dockets/PSD03 (last visited December 3, 2008).
[27] Advance Notice of Proposed Rulemaking: Regulating Greenhouse Gas Emissions under the Clean Air Act, EPA-HQ-OAR-2008-0318, June 2008, Federal Register: July 30, 2008 (Volume 73, Number 147), Proposed Rules, Page 44353-44502, available athttp://www.epa.gov/climatechange/anpr.html (last visited December 3, 2008); CO2 is a naturally occurring GHG. INVENTORY OF U.S. GREENHOUSE GAS EMISSIONS AND SINKS: 1996-2000 (April 2008), USEPA#430-R-08-005.
[28] Id. at 165.
[29] Daniel Brian, Regulating Carbon Dioxide Under the Clean AirAct As a Hazardous Air Pollutant, 33 Colum. J. Envtl. L. 369, 390 (2008).
[30] Friends of the Chattachoochee, Inc. and Sierra Club v. Couch, etal, Docket No. 2008CV146398, In the Superior Court of Fulton County, State of Georgia, Final Order (6/30/08).
[31] Id.
[32] See, supra note 14.
[33] In Re Deseret Power Electric Cooperative, PSD Appeal No. 07-03, EAB Order Denying Review In Part and Remanding In Part (Nov. 13, 2008).
[34] Id. at 63 (the EAB ultimately remanded the permit for the EPA to reconsider whether or not to impose a CO2 BACT limit finding that the EPA's rationale for not imposing such a limit in the permit at issue was not supported by the administrative record as defined by40 C.F.R. 124.18).
[35] Chevron Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843(1984) (holding that courts must defer to an agency's reasonable statutory interpretations when the statute is ambiguous . . ."[i]f a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect"); see also, OakvilleCommunity Action Group v. Louisiana Department of Environmental Quality, 2005-1365 (La.App. 1 Cir. 5/5/06), 935 so.2d 175 ("[a] state agency is charged with interpreting its own rules and regulations and great deference must be givien to the agency's interpretation.").
[36] LAC 33:III.501 (B)(5) ("[t]hose activities listed in the following table are approved by the permitting authority as insignificant on the basis of size, emission or production rate, or type of pollutant. By such listing, the permitting authority exempts certain sources or types of sources from the requirement to obtain a permit under this Chapter unless it is determined by the permitting authority on a site-specific basis that any such exemption is not appropriate . . . [e]missions of the following pollutants need not be included in a permit application . . . 3. carbon dioxide . . .").
[37] Id.
[38] 42 U.S.C. § 7416.
[39] Id.